**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Fernando CORTEZ–LOPEZ,
Defendant–Appellant.**

**No. 02–5400.**

United States Court of Appeals,
Sixth Circuit.

Feb. 6, 2003.

Before BOGGS and NORRIS, Circuit
Judges; and BELL, Chief District Judge.*

*ORDER*

This is a direct appeal from a criminal
judgment and commitment order in which
the only issue presented goes to the sen-
tence imposed. The parties have waived
oral argument and, upon examination, this
panel unanimously agrees that oral argu-
ment is not needed. Fed. R.App. P. 34(a).

In 2000, Fernando Cortez–Lopez was
indicted for his role in a conspiracy to
distribute five kilograms or more of co-
caine. The district court eventually ac-
cepted a guilty plea from Cortez–Lopez
and found him guilty of 1) conspiracy to
possess cocaine, in violation of 21 U.S.C.
§ 846, 2) possession with intent to distrib-
ute cocaine, and aiding and abetting, in
violation of 21 U.S.C. § 841(a)(1) and 18
U.S.C. § 2, and 3) distribution of cocaine,
and aiding and abetting, in violation of 21
U.S.C. § 841(a)(1) and 18 U.S.C. § 2. The
district court sentenced Cortez–Lopez to a
120–month term of incarceration and a
five-year period of supervised release.

The sole issue presented for appellate
review is whether the district court erred
in declining to effect a "safety valve" de-
parture below the mandatory minimum
sentence. The guidelines "safety valve"

---

* The Honorable Robert Holmes Bell, United
States Chief District Judge for the Western

District of Michigan, sitting by designation.

provision, USSG § 5C1.2, reflects verbatim 18 U.S.C. § 3553(f)(1)-(5), the statutory authority for courts to impose sentences below the statutory minimum penalty for defendants who meet the criteria. *United States v. Maduka*, 104 F.3d 891, 893 (6th Cir.1997). This section "seeks to reduce some of the harsh inflexibility of mandatory minimum sentences by enabling courts to account more fully for mitigating factors when sentencing those defendants who are the least culpable participants in drug trafficking cases." *Id.* (emphasis added). This court reviews the district court's interpretation of the guidelines de novo and its factual findings for clear error. *United States v. O'Dell*, 247 F.3d 655, 674 (6th Cir.2001).

Cortez–Lopez flew from Arizona to Louisville, Kentucky, to consummate a cocaine transaction that had been conducted by telephone. A confederate of Cortez–Lopez drove from Arizona to Louisville with approximately nine kilograms of cocaine. The parties to the transaction met at a Louisville hotel and exchanged some, but not all, of the cocaine for a large amount of money. One of the buyers left with approximately five kilograms of cocaine, Cortez–Lopez kept the money and his confederate retained the remaining cocaine. Law enforcement agents apprehended the buyer with the five kilograms of cocaine after an automobile pursuit and later found the remaining cocaine after conducting a search, pursuant to a warrant, of the confederate's hotel room. Agents also searched a room registered to Cortez–Lopez but did not find any of the money or other contraband. The officers then encountered Cortez–Lopez with a key to a different room, a room that Cortez–Lopez said did not contain any large sums of cash. The officers searched the room and discovered $116,463, the purchase price of the five kilograms of cocaine. Cortez–Lopez was charged as indicated based on the foregoing.

Cortez–Lopez and his counsel entered into plea negotiations and the matter was assigned to a magistrate judge for a possible plea hearing. The hearing was conducted in fits and starts as Cortez–Lopez repeatedly expressed his reluctance to enter a guilty plea to all three charges and had several disagreements with the facts as presented by the government. Cortez–Lopez admitted only to knowing his superior in the conspiracy as "Jose," that "Jose" supplied the cash found in the hotel room, and that Cortez–Lopez was not really certain that cocaine was involved in the transaction. Cortez–Lopez denied ever having any contact with the individual buyer who was apprehended after the automobile chase. The hearing ended with the magistrate judge agreeing to recommend that the plea should be accepted.

The district court accepted the plea and sentencing was set pending completion of a presentence report. The report contained, in part, recommendations that Cortez–Lopez did not qualify for a deduction from his base offense level for acceptance of responsibility and that he did not deserve a "safety valve" sentence departure below the mandatory minimum. Cortez–Lopez objected to these recommendations and the probation officer who prepared the report responded that Cortez–Lopez had never fully cooperated with the government and that, in denying that he had met with the cocaine buyer, Cortez–Lopez had lied. The district court stated its willingness to award the acceptance of responsibility deduction to Cortez–Lopez, based on the policy of the district court, but expressed its hesitation to award any "safety valve" departure below the minimum. In the course of this discussion, counsel for Cortez–Lopez acknowledged that his client had been less than fully and freely forthcoming with any assistance to the government. The district court took a recess to review notes and reports on this question, then announced its decision to deny the

"safety valve" request. The court found that, although Cortez–Lopez gave some information to law enforcement authorities, his cooperation was less than he might have supplied. The court formally denied the "safety valve" request and meted out the sentence of record.

On appeal, counsel for Cortez–Lopez brings one assignment for review, namely, that the district court erred in declining to grant the "safety valve" request. Counsel concedes that the district court considered the matter on its merits, but erroneously concluded that Cortez–Lopez had been less than forthcoming. Counsel points to the extensive, hours-long interview between Cortez–Lopez and other information supplied.

The district court did not commit clear error in refusing to sentence Cortez–Lopez under § 5C1.2. A defendant has the burden of proving eligibility for a "safety valve" award by a preponderance of the evidence. *United States v. Adu,* 82 F.3d 119, 123–24 (6th Cir.1996). The "truthful information" criterion, 18 U.S.C. § 3553(f)(5) and USSG § 5C1.2(5), requires "an affirmative act by the defendant truthfully disclosing all the information he possesses that concerns his offense or related offenses." *Adu,* 82 F.3d at 124. The defendant is required to provide complete information regarding not only the offense of conviction, but also any relevant conduct, including disclosure of information regarding the participation of other people in the offense. *Maduka,* 104 F.3d at 894. A trial court's refusal to apply § 5C1.2 is a factual finding which this court reviews for clear error. *Adu,* 82 F.3d at 124. A factual finding is clearly erroneous when the decision "strike[s] us as wrong with the force of a five-week-old, unrefrigerated dead fish." *United States v. Perry,* 908 F.2d 56, 58 (6th Cir.1990) (quoting *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.,* 866 F.2d 228, 233 (7th Cir.1988)).

The transcript of the plea hearings reflects that Cortez–Lopez had to be virtually dragged into a plea and consequent admissions, an observation confirmed by his trial counsel. He denied ever having personal knowledge that cocaine was involved or that he took part in the actual transaction, facts that are not in serious dispute in this case. In other words, Cortez–Lopez did not provide complete information regarding not only the offense of conviction, but also any relevant conduct, including disclosure of information regarding the participation of other people in the offense. *Maduka,* 104 F.3d at 894. The court's decision, the obvious product of careful study and the basis of which was articulated in open court, cannot be said to be clearly erroneous on the record before the court.

Accordingly, the district court's judgment is affirmed.